UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WESLEY L. CLARKE,

    *Plaintiff*,

v.

BERKLEY ASSURANCE COMPANY,

    *Defendant/Counter-Plaintiff.*

BERKLEY ASSURANCE COMPANY,

    *Third-Party Plaintiff*,

v.

THE ESTATE OF JAMES MCBEE,

    *Third-Party Defendant.*

No. 19-cv-0577 (DLF)

## MEMORANDUM OPINION

Wesley Clarke brings this lawsuit against Berkley Assurance Company (Berkley), alleging that Berkley breached an insurance policy that Clarke had purchased from it. Compl., Dkt. 1-1. Berkley counterclaims against Clarke and impleaded Clarke's creditor, the Estate of James McBee (the Estate), seeking a declaratory judgment that Berkley was not liable under Clarke's policy. Def.'s Countercl., Dkt. 4. The Estate in turn counterclaims against Berkley for indemnification of a judgment entered by the Superior Court of the District of Columbia against Clarke. Third-Party Countercl., Dkt. 6. Before the Court are Berkley's Motion for Summary Judgment, Dkt. 13, as well as Berkley's and the Estate's Motions for Sanctions against Clarke for failing to attend his deposition, Dkt. 14; Third-Party Def.'s Mot. for Sanctions, Dkt. 16. For

1

the following reasons, the Court will grant summary judgment to Berkley and grant in part and deny in part the motions for sanctions.

## I. BACKGROUND

### A. Factual Background[1]

Wesley Clarke, a lawyer in Washington, D.C., purchased several liability insurance policies from Berkley Assurance Company. Compl. ¶ 2. The policy relevant to this lawsuit required that Berkley "pay those sums that the insured becomes legally obligated to pay as 'damages' because of a negligent act, error or omission in the rendering of or failure to render 'professional legal services' for others for a fee." Insurance Policy at 7, Dkt. 13-3. The policy also imposed on Berkley "a duty to defend the insured against any 'suit' seeking 'damages' to which this insurance applies." *Id.* The policy defined "damages" as:

> the monetary portion of a judgment, award, or settlement; provided that, however, 'damages' shall not include:
> 1. Punitive or exemplary damages . . .
> 2. Taxes, criminal or civil fines, or attorneys' fees of a party other than an insured or other penalties imposed by law;
> 3. Sanctions; . . . or
> 5. The return, withdrawal, reduction, restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the insured for services or goods.

*Id.* at 12–13.

On October 8, 2013, James McBee died, leaving his sole asset (a condominium at 823 3rd St. SW, No. 310, Washington, D.C.) to his brother and heir, Thomas McBee. Berkley's

---

[1] Unless otherwise noted, the facts in this opinion are drawn from the uncontested allegations in Berkley's Statement of Undisputed Facts, Dkt. 13-1. *See Hawkins v. District of Columbia*, No. 17-cv-1982, 2020 WL 601886, at *4 (D.D.C. Feb. 7, 2020) ("[I]n ruling on a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted . . . in [the non-moving party's] opposition to the motion." (internal quotation omitted)). Neither Clarke nor the Estate contest the facts on which the Court relies.

Statement of Undisputed Facts ¶¶ 15–16.  Soon after, McBee hired Clarke to work as his counsel and as personal representative to the Estate.  *Id.* ¶¶ 16–18, 50.  In the following months, Clarke repeatedly acted against Thomas McBee's wishes—although purportedly in the interests of the Estate—for instance, by refusing to resign when asked and by selling the condominium when McBee wanted to retain title.  *Id.* ¶¶ 23–25, 34, 51.  Clarke also made multiple false statements to McBee—for example, that the property was "in the jaws of the Foreclosure Process" when no such proceedings existed.  *Id.* ¶¶ 24, 33.

On April 14, 2014, Thomas McBee petitioned the Superior Court of the District of Columbia, Probate Division, to stop the sale of the Estate's property and to remove Clarke as personal representative to the Estate.  *Id.* ¶¶ 32, 34.  Instead of delaying the sale until the court had ruled, however, Clarke surreptitiously arranged to have a replacement title company rush the title settlement, thus mooting the Superior Court's decision.  *Id.* ¶¶ 35–38, 54.  On June 19, 2014, Clarke filed his final accounting summarizing all the transactions that he had undertaken as personal representative to the Estate; McBee objected to this accounting on August 7, 2014.  *Id.* ¶¶ 2, 41–42.  As a result, on January 9, 2015, Superior Court Judge Gerald Fisher appointed a special "auditor-master" to investigate McBee's allegations against Clarke.  *Id.* ¶¶ 43–45.

The auditor-master completed his report on September 12, 2017.  *Id.* ¶ 46.  On October 24, 2017, Clarke emailed Berkley about the proceedings, seeking representation for his defense before the Superior Court, where Judge Fisher would consider whether to adopt the auditor-master's findings.  Compl. ¶¶ 3, 8.  Berkley declined coverage on November 21, 2017.  *Id.* ¶ 4.  Thereafter, Clarke continued his defense *pro se*.  *See* Probate Ct. Hr'g Tr. at 1, Dkt. 13-5.

On December 6, 2017, Judge Fisher held a hearing at which Clarke and the Estate each had the opportunity to contest conclusions in the auditor-master's report and to present arguments and evidence. Probate Ct. Hr'g Tr. at 2, 4–5. Clarke submitted seventy-two pages of objections to the report. *Id*. at 4–5. The Estate, in contrast, raised no objections to the auditor-master's report; instead, the Estate "filed a response . . . to the report agreeing with [the auditor-master's] findings and recommendations," submitted a "reply to the objections filed by Clarke," and limited its oral arguments "primarily . . . to [the court's] inquiries regarding the availability of punitive damages" because the auditor-master had recommended punitive damages but never specified an amount. *Id.* at 3, 5, 37.

On February 2, 2018, Judge Fisher approved the auditor-master's report in part and issued a judgment in favor of the Estate. *See* Statement of Undisputed Facts ¶¶ 48–63. Among other things, Judge Fisher found that Clarke violated Rules 1.3, 1.4, and 1.16 of the District of Columbia Rules of Professional Conduct, and he referred other possible violations to the D.C. Bar. *Id.* ¶¶ 55–59.[2] Judge Fisher also ordered that Clarke disgorge the $79,065.00 of legal fees that he had collected from the Estate, reimburse $37,127.22 of disallowed estate expenses, and pay $69,393.90 of McBee's attorney's fees. Order Approving Rep. at 1–2, Dkt. 13-4. The court did not adopt the auditor-master's recommendation to impose punitive damages. *Id.* at 2.

### B. Procedural History

On February 5, 2019, Clarke filed his initial complaint against Berkley in Superior Court, alleging breach of contract and bad faith. Compl. ¶¶ 6–15. On March 3, 2019, Berkley removed the case to the United States District Court for the District of Columbia, *see* Notice of Removal

---

[2] The District of Columbia ultimately disbarred Clarke on October 25, 2019. Order of Disbarment, Dkt. 22-2; *see also* Statement of Undisputed Facts ¶¶ 55–59, 71.

4

¶¶ 5–7, Dkt. 1, and on March 8, 2019, Berkley counterclaimed against Clarke for declaratory judgment and impleaded the Estate, *see* Def.'s Countercl. The Estate responded on March 26, 2019, counterclaiming that Berkley was obligated to indemnify the Estate for the Superior Court's judgment against Clarke. Third-Party Def.'s Countercl.

The parties began discovery and agreed on September 16, 2019 to schedule Clarke's deposition for October 2, 2019. Notice of Dep., Dkt. 15-1. Clarke failed to appear for his deposition on that morning; the evening before, at 5:44 p.m., he emailed counsel for Berkley and the Estate claiming that he was "stuck in nyc" as he was "closing [his] practice and . . . tied up until the first week of November." Email Exchange at 2, Dkt. 15-3. Both Berkley and the Estate subsequently moved for sanctions on the basis of Clarke's failure to attend the deposition. *See* Def.'s Mot. for Sanctions; Third-Party Def.'s Mot. for Sanctions.

On October 7, 2019, Berkley moved for summary judgment, seeking a declaration that it had no liability under the terms of Clarke's policy. Def.'s Mot. for Summ. J. On November 21, 2019, the Court directed Clarke to respond to the motion and warned him that failure to respond might result in dismissal of the case or entry of judgment for Berkley. November 21, 2019 Order, Dkt. 24. To date, Clarke has not responded. On June 11, 2020, the Court also ordered the Estate to respond. Minute Order (June 11, 2020). On June 25, 2019, the Estate filed an opposition contesting Berkley's motion for summary judgment. Third-Party Def.'s Opp'n, Dkt. 25.

## II.  LEGAL STANDARDS

### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  And a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  "If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Holcomb*, 433 F.3d at 895 (internal quotation marks omitted).

### B. Sanctions

Under Rule 37(d), the Court "may, on motion, order sanctions if a party or a party's officer, director, or managing agent . . . fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A).  The rule contains a non-exhaustive list of potential sanctions, which includes striking pleadings and treating certain matters as conceded, and further provides that "[i]nstead of or in addition to these sanctions, the court must require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* 37(d)(3).

"District courts . . . possess broad discretion to impose sanctions for discovery violations under Rule 37." *Parsi v. Daioleslam*, 778 F.3d 116, 125 (D.C. Cir. 2015).  "The central requirement of Rule 37 is that 'any sanction must be just,' which requires in cases involving severe sanctions that the district court consider whether lesser sanctions would be more appropriate for the particular violation." *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C.

Cir. 1996) (quoting *Ins. Corp. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)). As such, "[t]he choice of sanction should be guided by the 'concept of proportionality' between offense and sanction." *Id.* at 808 (citation omitted).[3]

### III.   ANALYSIS

#### A. Summary Judgment

Clarke's complaint alleges that Berkley breached its contract when it declined on November 21, 2017 to defend him in the Superior Court proceedings before Judge Fisher. Compl. ¶¶ 4, 6–9.  Clarke filed his claim with Berkley "in connection with an Auditor Master Report," and Berkley allegedly refused to defend him "based upon the Auditor Master Report" and with "no independent investigation" into the facts of the case, even though the Superior Court would be obligated to review the auditor-master's findings de novo. *Id.* ¶¶ 3–5, 13. According to Clarke's complaint, the "Judgment entered against [him]" by Judge Fisher resulted from his "lack of Defense pursuant to the [insurance] policy," and Berkley refused to defend him even after he had "brought the legal arguments regarding the de novo review [of the auditor-master's report] to [Berkley's] attention." *Id.* ¶¶ 8, 12.  In light of these allegations, Clarke's lawsuit concerns Berkley's alleged duty under the policy to defend him in litigation, rather than its duty to indemnify him after liability had already been incurred.

---

[3] The Estate moved for sanctions under both Rule 37 and Rule 30.  Third-Party Def.'s Mot. for Sanctions at 4–5.  But the Estate cites two provisions of Rule 30 that do not apply to the circumstances giving rise to its motion.  Rule 30(d)(2) refers to sanctions on "a person who impedes, delays, or frustrates the fair examination of the deponent"—that is, a person other than Clarke, the deponent here.  Fed. R. Civ. P. 30(d)(2).  Likewise, Rule 30(g) grants attorney's fees "if the noticing party failed to: (1) attend and proceed with the deposition." Fed. R. Civ. P. 30(g).  Berkley and the Estate, not Clarke, were the noticing parties here.  As a result, the Court construes the Estate's motion for sanctions as arising solely under Rule 37 and accordingly will apply the legal standard identified in text above.

Under District of Columbia law, an insurer's "duty to defend is broader than the duty to indemnify." *Interstate Fire & Cas. Co. v. 1218 Wisconsin, Inc.*, 136 F.3d 830, 833 (D.C. Cir. 1998). "Whereas the duty to indemnify is determined by the facts as ultimately proven in the case, the duty to defend depends only upon the facts as alleged and can exist even where the insured might later be absolved of liability." *Gaines v. Turner Constr. Co.*, No. 03-cv-2484, 2006 WL 8449134, at *5 (D.D.C. Feb. 27, 2006). As a result, "[a]ny doubt as to whether there is a duty to defend must be resolved in favor of the insured and the insurer has the burden of proving the applicability of a policy exclusion." *Sec. Title Guar. Corp. v. 915 Decatur St NW, LLC*, 427 F. Supp. 3d 1, 9 (D.D.C. 2019) (internal quotation omitted).

Nevertheless, courts must still determine whether the allegations against which the insured sought to be defended "state a cause of action within the policy's coverage, and . . . raise the possibility of coverage." *Id.* (internal quotations omitted). Berkley denied Clarke's claim for defense while the auditor-master's report was under de novo review before the Superior Court. Compl. ¶¶ 3–5. At that time, the auditor-master had recommended that the Superior Court impose four different categories of damages on Clarke: (1) disgorgement of Clarke's $79,065.00 in legal fees; (2) reimbursement of $38,532.27 of disallowed estate expenses; (3) payment of $69,393.90 covering the Estate's attorney's fees and costs; and (4) unspecified punitive damages. Probate Ct. Hr'g Tr. at 2–3. The Estate did not object to the auditor-master's report but instead "filed a response . . . to the report agreeing with [the auditor-master's] findings and recommendations" and urging their adoption. *Id.* at 3, 5. Accordingly, only those four categories of potential damages were at issue, and Berkley only had a duty to defend Clarke before the Superior Court if its policy covered at least one of these four categories of damages.

Neither Clarke nor the Estate disputes that the terms of the policy excludes these four categories of damages.[4]  That is not surprising given that the plain language of the policy explicitly exempts all four categories from the scope of Berkley's duty to defend.  The policy specifically limits Berkley's duty to defend Clarke to "any 'suit' seeking 'damages' to which this insurance applies," so the extent of Berkley's duty hangs on the definition of "damages" later in the policy.  *See* Insurance Policy at 7.  And that definition has multiple specific carveouts that apply here.

First, the policy defines "damages" to exclude "punitive or exemplary damages," *see id.* at 12, so Berkley was not obligated to defend Clarke against the auditor-master's open-ended recommendation of punitive damages.  Second, the definition excludes "attorneys' fees of a party other than an insured . . . imposed by law."  *Id.*  The Estate was a party to the Superior Court case other than the insured (Clarke), so the auditor-master's recommendation that the court require Clarke to pay the Estate's $69,393.90 of attorney's fees and costs was also outside the scope of Berkley's obligations.  Third, the definition excludes the "return . . . of any [] profits or charges for services or consideration and/or any expenses paid to the insured for services and goods."  *Id.* at 13.  That provision, likewise, clearly encompasses the auditor-master's recommendation that the Superior Court order disgorgement of Clarke's $79,065.00 in legal fees.  Probate Ct. Hr'g Tr. at 3.

The final component of the auditor-master's recommendation—the reimbursement of disallowed estate expenses—is slightly more complex, because the report mentions a variety of

---

[4] Clarke failed to respond to Berkley's motion at all.  The Estate responded but only addressed two other arguments that Berkley raised in its motion.  *See* Third.-Party Def.'s Opp'n.  The Estate provided no response to Berkley's argument that the policy did not cover the four categories of damages that the auditor-master recommended that the Superior Court impose.  *Id.*

9

expenses: for instance, the cost of a housing appraisal, moving fees, storage fees, and a realtor's sales commission.  *See* Auditor-Master's Report ¶ 718, Dkt. 13-2.  Because James McBee was in debt when he died and the condominium was his sole asset, these expenses were paid out of the sale of the property.  Statement of Undisputed Facts ¶¶ 15–16, 24, 39.  It is unclear whether Clarke paid for all of these expenses initially and later obtained reimbursement from the Estate, or whether the Estate paid for some of these expenses directly as they were incurred.  *See id*. ¶¶ 39, 41.  Regardless, Clarke's policy with Berkley excluded coverage for all of these "expenses" under either scenario.  Any expenses for which Clarke was reimbursed by the Estate would qualify as "expenses paid to the insured for services and goods."  Insurance Policy at 13.  And any expenses that the Estate incurred directly are likewise excluded as the "restitution or payment of any fees . . . or charges for services."  *Id.*

For the reasons described above, the policy excludes from coverage all four categories of damages under review before the Superior Court.  Even under the broad standard applicable to an insurer's duty to defend, *see Sec. Title Guar. Corp.*, 427 F. Supp. 3d at 9, the policy exempted Berkley from any obligation to defend Clarke under the particular circumstances of this litigation.  In short, Clarke was not litigating a "'suit' seeking 'damages' to which this insurance applies," *see* Insurance Policy at 7, and therefore Berkley had no duty to defend him.  Accordingly, the Court will grant Berkley's motion for summary judgment.

### B. Sanctions

Berkley and the Estate both have moved for sanctions against Clarke for the same misconduct: his failure to attend his deposition scheduled for October 2, 2019.  *See* Def.'s Mot. for Sanctions; Third-Party Def.'s Mot. for Sanctions.  Berkley asks that Clarke pay reasonable attorney's fees and costs related to the deposition and motion for sanctions and also that the

Court strike Clarke's pleadings. Def.'s Mot. for Sanctions at 1. The Estate, for its part, requests not only that Clarke pay costs and attorney's fees, but also that the Court treat "the matters sought to be discovered in the deposition" as conceded "in accordance with the claims of" the Estate; order Clarke to no longer "oppose any of the claims in the Counterclaim filed by" the Estate; and enter a default judgment "that includes a determination as to liability and a grant of all relief sought by" the Estate. Third-Party Def.'s Mot. for Sanctions at 1. Because the Estate's only claim in this litigation is against Berkley, the sanctions that the Estate seeks would thus result in a declaratory judgment as to Berkley's liability. *See* Third-Party Countercl. ¶¶ 4, 6–7.

The Court has broad discretion to impose just sanctions. *Parsi*, 778 F.3d at 125. Federal courts look to factors such as deterrence, party prejudice, and court burden to determine proper sanctions and have often found costs and attorney's fees fitting sanctions for non-attendance at a deposition. *See, e.g.*, *Dist. Title v. Warren*, 319 F.R.D. 25, 32, 35 (D.D.C. 2015); *Campbell v. Nat'l R.R. Passenger Corp.*, 309 F.R.D. 21, 26, 29 (D.D.C. 2015). Indeed, under Rule 37, when a party fails to appear for a properly noticed deposition, "the court must require the party failing to act . . . to pay the reasonable expenses and attorney's fees[] caused by the failure, unless the failure was substantially justified." *Warren*, 319 F.R.D. at 32 (quoting Fed. R. Civ. P. 37(d)(3)).

Here, Clarke did not warn Berkley and the Estate of his absence until after business hours the night before the deposition, which had been scheduled more than two weeks earlier. *See* Email Exchange at 2. In his cancellation email, Clarke provided little explanation of his inability to attend the deposition, saying only that he was "stuck in nyc" as he was "closing [his] practice and . . . tied up until the first week of November." *Id.* This bare-bones justification was objectively unreasonable as grounds for failing to attend a deposition scheduled that far in advance. Clarke subsequently claimed that he failed to attend as a result of a family emergency,

11

an excuse that he supplied only after the other parties had already moved for sanctions. But his original explanation calls his latter one into question, and it is uncontested that Clarke never attempted to reschedule his deposition, either immediately following his initial absence or at any time since. His failure to attend his own deposition therefore was not "substantially justified." Fed. R. Civ. P. 37(d)(3).

Under Rule 37, when a party fails to attend its own deposition without substantial justification, the Court "*must* require" that party "to pay the reasonable expenses, including attorney's fees, caused by the failure," "[i]nstead of or in addition to [other] sanctions." Fed. R. Civ. P. 37(d)(3) (emphasis added). In light of the rule's mandatory phrasing, as well as the inadequate explanations that Clarke has provided for his absence, the Court will grant the pecuniary sanctions that Berkley and the Estate seek. Accordingly, Clarke must pay the costs of the transcriptionist as well as the attorneys' fees of the two moving parties for the time expended preparing for the deposition, attending the deposition, and crafting their motions for sanctions. If not for Clarke's dilatory cancellation of the deposition, Berkley and the Estate would never have incurred these wasted expenses.

Beyond the pecuniary sanctions required by statute, however, "[t]he Court enjoys wide discretion in fashioning sanctions proportionate to a party's offenses." *Alvarado v. Rainbow Inn, Inc.*, 312 F.R.D. 23, 33 (D.D.C. 2015). Exercising this discretion, the Court will decline to impose any non-monetary sanctions. As to Berkley, its motion for sanctions urges the Court to strike Clarke's pleadings. Def.'s Mot. for Sanctions at 1. But that request is now moot given the Court's grant of summary judgment to Berkley.

The Estate, in contrast, asks the Court to draw legal conclusions from Clarke's failure to attend his deposition and to grant a default judgment on liability in the Estate's favor. Third-

Party Def.'s Mot. for Sanctions at 1. But such sanctions would promote the Estate's claim at the expense of Berkley. Clarke—not Berkley—failed to attend the deposition, and Clarke's testimony might have helped either Berkley or the Estate. Because both moving parties are guiltless with respect to Clarke's absence, the Court will not prejudice either by drawing conclusions that favor the other. *See Laclede Gas Co. v. G. W. Warnecke Corp.*, 604 F.2d 561, 566 (8th Cir. 1979) (prejudice to other parties of a complex litigation is a central consideration for sanctions).

More importantly, in granting summary judgment to Berkley, the Court has relied on the damages exclusion provision of Clarke's insurance policy, to which neither Clarke nor the Estate has objected. Nothing in Clarke's potential testimony could have changed the application of this contractual provision. And the Estate has furnished no counterargument to the application of this provision that might have found support in Clarke's testimony. In short, Clarke's failure to attend his deposition had no effect upon the Court's resolution on the merits of this lawsuit, and the Court will therefore decline the Estate's requests for legal conclusions and default judgment as sanctions for Clarke's absence.

## CONCLUSION

For the foregoing reasons, Berkley's motion for summary judgment is granted. Berkley's motion for sanctions and the Estate's motion for sanctions are both granted in part and denied in part. A separate order consistent with this decision accompanies this memorandum opinion.

*Dabney L. Friedrich*
DABNEY L. FRIEDRICH
United States District Judge

July 23, 2020